# EXHIBIT A

# [Settlement Agreement]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

ANTHONY ESCOBAR, TONAKIA MOSHA
EVANS, and DIANNA ABRAMOVA, on
behalf of themselves, FLSA Collective
Plaintiffs and the Class,

          Plaintiffs,

   v.

PRET A MANGER (USA) LIMITED, and
JOHN DOE CORPORATIONS 1-100,

         Defendants.

-------------------------------------------------- X

17-CV-05227 (VSB)

**ECF Case**

## <u>GLOBAL SETTLEMENT AGREEMENT</u>

 THIS GLOBAL SETTLEMENT AGREEMENT, including all exhibits hereto (collectively, with the Global Settlement Agreement, the "Agreement"), is made and entered into, by Defendant Pret A Manger (USA) Ltd. ("Pret" or "Defendant"), and by Plaintiffs Anthony Escobar ("Escobar"), Tonakia Mosha Evans ("Evans"), and Dianna Abramova ("Abramova") (collectively, "Plaintiffs"), on behalf of individuals who will opt-in pursuant to this Agreement and on behalf of the Class Plaintiffs seek to represent (as defined herein), and by the Lee Litigation Group, PLLC ("Class Counsel").

 WHEREAS, on July 11, 2017, in a case styled *Escobar et al. v. Pret A Manger (USA) Limited et al.*, Case No. 17-cv-05227 (VSB)(KHP) (the "Litigation"), Plaintiffs sued Pret and John Doe Corporations 1-100 in the United States District Court for the Southern District of New York ("Court").  The putative collective action/class action complaint ("Complaint") included allegations under the Fair Labor Standards Act ("FLSA") and New York law;

 WHEREAS, on December 29, 2017, Plaintiffs filed an Motion to conditionally certify a collective action as to Plaintiffs' FLSA claims (the "Conditional Certification Motion");

 WHEREAS, the Court has not determined whether to grant the Conditional Certification Motion, nor has it considered whether the New York claims may proceed as a class action under Fed.R.Civ.P. 23;

 WHEREAS, Defendant denies all of the allegations against it and denies that it is liable for damages to anyone with respect to the causes of action asserted in the Litigation;

 WHEREAS, the Parties engaged in a private mediation session and in arms-length negotiations and reached a settlement, the principal terms of which were memorialized in a Term Sheet signed by the Parties at the mediation;

WHEREAS, the Parties do not abandon their respective positions on the merits of the Litigation, but recognize that continued litigation, including any appeals, would be protracted, expensive, uncertain, and contrary to their respective best interests. Accordingly the Parties believe that this Agreement is the most efficient and beneficial method to resolve the claims actually asserted and those that could have been asserted therein;

WHEREAS, this Agreement is intended to, and does, effectuate the full, final, and complete resolution of all allegations and claims that were asserted, or could have been asserted, in the Litigation, including any appeals, by Plaintiffs and the class members that Plaintiffs seek to represent.

NOW, THEREFORE, in consideration of the foregoing, and the mutual promises herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 1.    DEFINITIONS

In addition to various terms defined elsewhere, the terms listed in this Section shall have the meanings ascribed to them for purposes of this Agreement.

1.1     **Claims Administrator.** "Claims Administrator" means the entity jointly selected by the Parties to provide notice to the Class (as defined below) and administer payments under the terms of this Agreement.

1.2     **Class Counsel.** "Class Counsel" refers to Lee Litigation Group, PLLC. For purposes of providing any notices required under this Agreement, Class Counsel shall refer to C.K. Lee, Esq., 30 East 39th Street, Second Floor, New York, NY 10016.

1.3     **Class; Class Member.** "Class" shall mean current and former employees of Pret who worked for Pret in the state of New York in a Covered Position at any time from March 29, 2014 to the date of entry of the Order Granting Preliminary Approval, as defined in Section 1.10. A member of the class is a "Class Member." For purposes of this Agreement, "entry" of an Order shall mean that the Court has signed and the Parties have received notification of the Order.

1.4     **Covered Position.**     "Covered Position" shall mean team member, team member star, barista, team member trainer, kitchen team leader, shop team leader, team leader, assistant manager, assistant manager-in-training, manager-in-training or any other hourly, non-exempt store-based position.

1.5     **Declarant.**     "Declarant" refers to declarant Steven Wilson.

1.6     **Defendant's Counsel.** "Defendant's Counsel" refers to Jones Day.  For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Michael Gray, 77 West Wacker, Suite 3500, Chicago, Illinois 60601.

1.7     **Effective Date.** "Effective Date" shall be the date that all of the following have occurred:

(A)     The Court has entered judgment and ruled on the motion for attorneys' fees and reasonable costs pursuant to Section 3.2 and service payments pursuant to Section 3.3; and

(B)     The judgment and the rulings on such motions have become Final. "Final" means the later of:

(1)     The governing time periods for seeking rehearing, reconsideration, appellate review and/or an extension of time for seeking appellate review have expired and there have been no such actions; or

(2)     If rehearing, reconsideration, appellate review, and/or an extension of time for seeking appellate review is sought, 30 calendar days after any and all avenues of rehearing, reconsideration, appellate review and/or extension of time have been exhausted and no further rehearing, reconsideration, appellate review, and/or extension of time is permitted, and the time for seeking such things has expired, and the judgment has not been modified, amended, or reversed in any way.

1.8     **Fairness Hearing.**  "Fairness Hearing" shall mean the hearing in the Litigation on a motion for judgment and final approval of this Agreement.  The Parties will jointly file such a motion under the terms of this Agreement.

1.9     **Final Approval.**  "Final Approval" shall mean the Court's entry of an order and a judgment granting final approval to this Agreement and dismissing the Litigation with prejudice.

1.10    **Preliminary Approval.**  "Preliminary Approval" shall mean the Court's entry of an order (hereinafter "Order Granting Preliminary Approval"), in the form attached as **EXHIBIT A**, conditionally certifying the Class and preliminarily approving, inter alia, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.11    **Qualified Class Member.**  "Qualified Class Member" means a Class Member who does not opt out and who therefore becomes eligible for an Settlement Payment as described in Section 3.4.

1.12    **Qualified Settlement Fund or QSF.**  "Qualified Settlement Fund" or "QSF" means the fund or account established by the Claims Administrator, within the meaning of Treasury Regulation § 1.468B-1, *et seq.*

1.13    **Settlement Checks**.  "Settlement Checks" means checks issued to Qualified Class Members for their share of the Net Settlement Amount (as defined herein) calculated in accordance with Paragraph 3.4(C) of this Agreement.

**2.      APPROVAL OF SETTLEMENT AND CLASS NOTICE**

2.1     **Retention of Claims Administrator.**

(A)     Within 7 calendar days of the execution of this Agreement, the Parties shall retain a Claims Administrator, who shall be responsible for claims administration and various other duties described in this Agreement.  The duties of the Claims Administrator shall be limited to those described in this Agreement, and the Claims Administrator shall have no discretion beyond that granted by this Agreement.  The Claims Administrator and Class Counsel shall be required to agree in writing to treat information it receives or generates as part of the claims administration process as confidential and to use such information solely for purposes of claims administration.  Defendant's Counsel and Class Counsel will have equal access to the Claims Administrator, as well as all information in possession of the Claims Administrator related to the administration of the settlement, except that the Claims Administrator shall not provide Class Counsel with access to any social security numbers provided to or obtained by the Claims Administrator in connection with its duties under the terms of this Agreement.  Except upon the consent of the other party, neither party shall have the authority or ability to expand the duties, responsibilities or authority of the Claims Administrator beyond those described in this Agreement.

(B)     All fees and expenses of the Claims Administrator shall be paid out of the Total Settlement Amount, as defined in Section 3.1 of this Agreement.  The Claims Administrator shall be required to agree to a reasonable cap for fees and expenses for claims administration work, and such cap shall provide the basis for the reserve described in Section 3.1 of this Agreement.  Any fees and expenses in excess of the cap shall not be paid to the Claims Administrator unless the Claims Administrator files a declaration with the Court explaining the basis for the additional fees and costs and receives approval by the Court for such payments.  In no event shall the Claims Administrator seek additional fees and expenses after the Fairness Hearing. If the settlement is not given final approval by the Court or the Court's judgment does not become Final, the Parties shall bear settlement administration costs and fees equally.

(C)     Without limiting any duties set forth elsewhere in this Agreement:

(1)     The Claims Administrator shall be responsible for mailing Notice (as defined below), change of address forms, Opt-Out forms, and tax forms to Class Members; responding to Class Member inquiries; calculating settlement allocations; establishing and administering the QSF; collecting and evaluating tax forms submitted by Class Members and Class Counsel; distributing settlement payments; calculating and withholding Class Members' share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding and the employee portion of FICA, Medicare and any applicable state or local employment taxes) ("Income Withholding and Employee Portion Payroll Taxes"); remitting such withheld Income Withholding and Employee Portion Payroll Taxes to the appropriate Taxing Authorities and fulfilling all tax reporting requirements with respect thereto; calculating the employer share of applicable payroll taxes (including, without limitation, FUTA, SUTA and the employer portion of FICA, Medicare and any applicable state or local employment taxes) ("Employer Portion Payroll Taxes"); remitting such Employer Portion Payroll Taxes (to be funded by Pret) to the appropriate Taxing Authorities and fulfilling all tax reporting requirements thereto; preparing and filing all tax returns necessary for the settlement and the QSF; preparing one or more declarations regarding the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein, either in this Section 2.1(C) or elsewhere in this Agreement.

(2)     The Claims Administrator shall provide weekly reports to counsel for the Parties providing the status of the claims administration process, including: (1) the status of mailing the Notice and names of Class Members for whom the Notice was returned as undeliverable; (2) the names of Class Members who submit Opt-Out Statements or objections; and (3) the status of the claims administration process, distribution of the Settlement Checks, tax withholding and reporting, and other matters relating to the settlement.

(3)     The Claims Administrator shall take the following reasonable steps to obtain updated addresses of any Class Members for whom a Notice is returned by the Post Office as undeliverable: (1) process the name and address through the United States Postal Service's National Change of Address database; (2) perform address searches using public and proprietary electronic resources that lawfully collect address data from various sources such as utility records, property tax records, motor vehicle registration records, and credit bureaus; and (3) any other steps the Claims Administrator deems warranted. The Claims Administrator shall notify Class Counsel and the Defendant's Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

(4)     The Claims Administrator shall keep accurate records of the dates on which it sends Notice to Class Members.

(5)     The Claims Administrator shall promptly provide a current IRS Form W-9 of the QSF to Pret so as not to delay the deposit of the Total Settlement Amount into the QSF, as set forth in Section 3.5 of this Agreement.

(6)     The Claims Administrator shall keep accurate records of all Opt-Out Statements in accordance with Section 2.4 of this Agreement.

(7)     The Claims Administrator shall keep accurate records of all objections in accordance with Section 2.5 of this Agreement.

(8)     The Claims Administrator shall prepare and mail Settlement Checks to Qualified Class Members and make other payments as required by this Agreement. The Claims Administrator shall notify Qualified Class Members of the deadline described in Section 3.4(E) for cashing, depositing, endorsing or otherwise negotiating Settlement Checks.  If any Class Member requests that his or her Settlement Checks be reissued during the Check Cashing Period because their Settlement Checks were lost or were not received, after verifying the Class Member's identity, the Claims Administrator shall stop payment on the original Settlement Checks and provide replacement Settlement Checks to the Class Member.

(9)     The Claims Administrator shall provide counsel for the Parties with weekly reports showing the number of Settlement Checks that have been cashed, deposited, endorsed, or otherwise negotiated, any Settlement Checks that have been returned as undeliverable in accordance with Section 5(E) of this Agreement, and any Settlement Checks that were reissued.

(10)     The Claims Administrator shall calculate and handle tax withholding, payment and reporting in accordance with Section 3.6 of this Agreement and, in

furtherance of this responsibility, may request, as necessary, tax forms or other information from Class Members and Class Counsel (such as applicable state tax forms) in addition to those IRS forms required to be completed and submitted as provided in this Agreement.

   (11) The Claims Administrator shall apply any remaining amounts in the QSF to unforeseen expenses and then provide the remainder to City Harvest within thirty (30) days following the Check Cashing Period, in accordance with Section 3.4(E) of this Agreement. Class Counsel shall have no liability to Class Members for any portion of the Unclaimed Settlement Amount given to City Harvest as described in Section 3.4(E) of this Agreement.

   (12) The Claims Administrator shall establish a case-specific settlement administration website containing the Notice, Opt-Out Form, change of address form, and relevant case documents.  The Claims Administrator shall also establish a toll-free number and e-mail address to be included in the Notice.

   (13) Any other duties described elsewhere in this Agreement.

  2.2 **Preliminary Approval of Settlement.** Following execution of this Agreement, Plaintiffs will submit this Agreement to the Court, together with a Motion for Order Conditionally Certifying Settlement Class and Preliminarily Approving a Class Action Settlement, the Order Granting Preliminary Approval (in the form attached as **EXHIBIT A**), a proposed Notice to the Class of Proposed Settlement of Class Action Lawsuit and Fairness Hearing (in the form attached as **EXHIBIT B**), a proposed Opt-Out Statement (in the form attached as **EXHIBIT C**); a proposed change of address form (in the form attached as **EXHIBIT D**); proposed Individual Releases to be signed by Plaintiffs and Declarant receiving a service payment as described in Section 3.3 of this Agreement (in the form attached as **EXHIBIT E**). Plaintiffs will seek, and Defendant will, for purpose of settlement, refrain from opposing, conditional certification of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

  2.3 **Notice of Settlement.**

   (A) Within 15 calendar days following the entry of an Order Granting Preliminary Approval, Defendant will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the names, employee ID numbers, Social Security Numbers (to the Claims Administrator only), last known addresses, and phone numbers of all Class Members up through the date of entry of the Order Granting Preliminary Approval.  On the same date, Defendant will provide the Claims Administrator and Class Counsel with data for each Class Member for the period of time that each such Class Member held a Covered Position showing each Class Member's dates of employment in a Covered Position, and full/part-time status during that time.

   (B) The data provided by Defendant to the Claims Administrator pursuant to this Agreement (other than address information) shall be conclusively presumed to be accurate.

   (C) Promptly following the Court's entry of the Order Granting Preliminary Approval, in the form attached as **EXHIBIT A** hereto, the Claims Administrator shall prepare

final versions of the following documents, incorporating into the documents the relevant dates and deadlines set forth in the Court's order: (1) a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the form attached as **EXHIBIT B** ("Notice"), (2) an Opt-Out Statement in the form attached as **EXHIBIT C**; and (3) a change of address form in the form attached as **EXHIBIT D**.

      (D)    Within 15 calendar days after the Defendant's delivery of the information referenced in Section 2.3(A) (the "Initial Mailing Deadline"), the Claims Administrator shall mail, <u>via</u> First Class United States mail, postage prepaid, the final versions of the documents referenced in Section 2.3(C) to each Class Member.

      (E)    The Claims Administrator shall take reasonable steps to obtain the correct address of any Class Members for whom the documents referenced in Section 2.3(C) are returned by the post office as undeliverable, including the steps described in Section 2.1(C)(4) described above. Where correct addresses are obtained, the Claims Administrator shall attempt mailing to those Class Members for whom the documents were returned by the post office as undeliverable. In no event shall the Claims Administrator attempt re-mailing of the Notice to any Class Member more than 30 calendar days after the date of the initial mailing. The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any documents returned by the post office as undeliverable within five (5) calendar days of the documents being returned to the Claims Administrator. To the extent any Class Member submits a change of address form or the Claims Administrator obtains an updated address for the Class Member using any other means, the Claims Administrator shall use the new address for the purposes of mailing Settlement Checks to that Class Member.

2.4    **Class Member Opt-Out.**

      (A)    Any Class Member may request exclusion by "opting out." To do so, a Class Member must submit a written and signed request for exclusion to the Claims Administrator, in the form of the Opt-Out Statement attached as **EXHIBIT C**.

      (B)    To be effective, a Class Member's Opt-Out Statement must be sent to the Claims Administrator via First-Class United States mail, postage prepaid and postmarked no later than a date to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing. This date will be 45 calendar days after the Initial Mailing Deadline, and the period of time between the Initial Mailing Deadline and this date shall be referred to as the "Opt-Out Period."

      (C)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives. Within 3 business days of its receipt thereof, the Claims Administrator shall send to Class Counsel and Defendant's Counsel copies of each such Opt-Out Statement. This obligation shall be on-going, regardless of whether the Opt-Out Statement is timely or not.

      (D)    Within 5 calendar days after the end of the Opt-Out Period, the Claims Administrator (or counsel for the Parties) shall file with the Clerk of Court copies of any timely submitted Opt-Out Statements. The filed copies shall be stamped as described in Section 2.4(C),

and all address information and social security numbers shall be redacted from them. Additionally, within 5 calendar days after the end of the Opt-Out Period, the Claims Administrator shall send to Class Counsel and Defendant's counsel a final list of all persons who timely submitted Opt-Out Statements and stamped copies of any Opt-Out Statements received with Social Security Numbers redacted. The Claims Administrator shall retain the originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Class Member who does not timely opt out will be bound by the release set forth in Section 4.

2.5     **Objections To Settlement.**

(A)     Class Members (other than those who have opted out pursuant to Section 2.4) may present objections to the proposed settlement at the Fairness Hearing. To do so, an objector must first present his or her objections to the Claims Administrator in writing. To be considered, such objections must be sent to the Claims Administrator via First-Class United States mail, postage prepaid; they must be postmarked no later than 45 calendar days after the Initial Mailing Deadline; and they must be received by the Claims Administrator no later than 7 calendar days after the end of the Opt-Out Period. The Claims Administrator shall stamp the postmark date and the date received on the original of any such objection. Additionally, the Claims Administrator shall send copies of each objection to Class Counsel and Defendant's Counsel by e-mail and overnight delivery not later than 2 business days after receipt thereof. The Claims Administrator (or counsel for the Parties) shall also file the date-stamped originals of any and all objections with the Clerk of Court within 10 calendar days after the end of the Opt-Out Period.

(B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections to the Claims Administrator. Any objector may withdraw his/her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in Section 2.5(A).

(C)     The Parties may file with the Court written responses to any filed objections together with their motion for final approval of the settlement prior to the Fairness Hearing.

2.6     **Motion for Judgment and Final Approval.**  Not later than 30 calendar days after the end of the Opt-Out Period or by any deadline set by the Court, the Parties will file a Motion for Judgment and Final Approval requesting: (1) an order granting final certification, for settlement purposes, of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b) and final approval of this Agreement, including a ruling that the Agreement is final, fair, reasonable, adequate and binding on all Class Members who have not timely opted out pursuant to Section 2.4; (2) entry of judgment in accordance with this Agreement and in a form to be proposed by the Parties; (3) dismissal of the Litigation with prejudice, subject to the Court's retention of jurisdiction to oversee enforcement of the

Agreement; and (4) an order approving as fair the individual releases in the form attached as **EXHIBIT E**. The Parties' Motion for Judgment and Final Approval will be considered separate and apart from the Court's consideration of any applications for attorneys' fees and costs and/or service payments, and the Court's ruling on any such separate applications will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

2.7    **Settlement Checks.** Within 30 days of the Effective Date or the date on which the Court resolves any disputes under Section 5(C) of this Agreement, whichever is later, each Class Member who does not opt out pursuant to Section 2.4 will be sent a Settlement Check containing a Settlement Payment as described in Section 3.4(C), which will contain the following affirmation:

> "My endorsement of this check acknowledges that I am receiving this payment pursuant to the resolution of my claims as a settlement class member in *Escobar v. Pret A Manger* and that I have opted into the case pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and given my consent to become a party."

2.8    **Effect of Termination or Failure to Obtain Preliminary or Final Approval.** In the event that this Agreement is not approved in its entirety by the Court and/or the Court does not grant Preliminary Approval or Final Approval, or in the event that this Agreement is terminated, cancelled, declared void, including pursuant to Section 2.9 below, or fails to become effective in accordance with its terms; or if the Effective Date does not occur, the Parties shall proceed as follows:

(A)    Defendant shall have no obligation to make any payments provided for by this Agreement, other than its share of accrued claims administration costs.

(B)    The Term Sheet (previously agreed to by the Parties) and this Agreement (other than the non-admission provisions in Section 4.4 and this Section 2.8) shall be deemed null and void, and their terms and provisions shall have no further force or effect.

(C)    Neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Agreement shall be cited to, used or deemed admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

(D)    The Litigation shall proceed without prejudice as if no settlement had been attempted, unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision to deny Preliminary Approval or Final Approval in the form agreed to by the Parties, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(E)    The Parties shall not be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class action certification or the merits of Plaintiffs' claims in the Litigation or any other issue, but rather shall retain the right to assert or dispute all claims and allegations, to assert or dispute all applicable defenses, and to assert or dispute the propriety of class action certification on all applicable grounds.

(F)     Any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

(G)     None of the information provided by Defendant to Plaintiffs or Class Counsel for purposes of settlement negotiations only or obtained by Plaintiffs or Class Counsel about Class Members as a result of the settlement approval process shall be used by Plaintiffs or Class Counsel in the Litigation, unless the information is obtained later through the litigation process.

(H)     Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid to Class Counsel, or reducing the amount of any service payment, or claims administration fees and costs, shall constitute grounds for cancellation or termination of this Agreement or grounds for limiting any other provision of the judgment agreed upon by the Parties. Class Counsel retains and reserves all rights to appeal or seek reconsideration of any order of the Court reducing the amount of attorneys' fees or costs to be paid to Class Counsel and/or any order of the Court reducing the amount of any service payment. Any aforementioned reduction shall be deposited into the QSF for distribution to Class Members.

(I)     If this Agreement is terminated after Notice is sent, or if for any other reason the Effective Date does not occur after Notice is sent, the Claims Administrator shall provide notice to all Class Members informing them that the settlement did not become effective, that as a result, no payments will be made to Qualified Class Members under this Agreement, and that the Litigation will continue, along with any additional information jointly agreed to by Class Counsel and Defendant. Such notice shall be mailed by the Claims Administrator via United States First Class Mail, postage prepaid, to the addresses to which Notice was sent or to any updated addresses obtained by the Claims Administrator after Notice was sent. The costs of such mailing shall be split equally between the Parties.

(J)     Any class previously certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. 216(b) for purposes of settlement, shall be decertified, and Defendant shall retain the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in this action.

(K)     In the event that Defendant terminates this Agreement pursuant to Section 2.9, Defendant shall incur the costs of mailing notice as set forth in Section 2.8(I) of this Agreement.

2.9     **Effect of Substantial Opt-Outs.**  If more than 750 Class Members choose to opt-out of the settlement as described in this Agreement, then Defendant shall have the option, to be exercised within 10 calendar days after the end of the Opt-Out Period, of terminating this Agreement and not proceeding with the settlement.

## 3.     CONSIDERATION

3.1     **Total Settlement Amount.**  Pret agrees to pay $875,000.00 ("Total Settlement Amount") into the QSF administered by the Claims Administrator not later than 60 days after

Preliminary Approval is granted. The Total Settlement amount shall cover, resolve, and fully satisfy any and all amounts due under this Agreement, including but not limited to: (1) all payments to be made to Plaintiffs, Declarant, and Class Members pursuant to this Agreement; (2) all attorneys' fees and costs approved by the Court; (3) any court-approved service payments; and (4) the reserve set aside for reasonable costs of settlement administration. Under no circumstances will Defendant be required to pay more than the $875,000.00, other than Pret's share of payroll taxes as described in Section 3.6 of this Agreement.

    3.2    **Attorneys' Fees and Costs.**  At the Fairness Hearing, Class Counsel shall petition the Court for no more than 33% of the Total Settlement Amount as an award of attorneys' fees, plus reimbursement of reasonable litigation costs and expenses. Defendant will not oppose such a fee and cost application. All fees and costs approved by the Court shall be paid from the Total Settlement Amount. Class Counsel understand and agree that such payment shall be Pret's full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of individuals in connection with the Litigation, and that the fee and cost award by the Court shall supersede and extinguish, as of the Effective Date, any prior agreement between Class Counsel and Plaintiffs (and/or, as the case may be, any Declarant or other Class Member) concerning attorneys' fees and costs associated with the Litigation. Defendant shall have no additional liability for any fees and costs associated with the Litigation.

    3.3    **Service Payments.**

        (A)    At the Fairness Hearing, Plaintiffs and Declarant, through counsel, will apply for $5,000 each in service payments to be deducted from the Total Settlement Amount.

        (B)    Defendant will not oppose any such application, provided however that each Plaintiff and Declarant will not receive his or her service payment until (1) the Court approves the payment and the form of the individual release attached hereto as **EXHIBIT E**; and (2) he or she has executed and provided to Defendant's Counsel an individual release in the form attached as **EXHIBIT E** after the Court approves the service payment and form of the individual release.

        (C)    Any service payments approved by the Court shall be paid from the Total Settlement Amount.

        (D)    Prior to making any service payment to any Plaintiff or Declarant pursuant to Section 3.3, each such Plaintiff or Declarant must have provided a validly completed current IRS Form W-9 to the Claims Administrator.

        (E)    The service payments and the requirements for obtaining such payments set forth in this section are separate and apart from, and in addition to, other recovery which Plaintiffs and Declarant might be entitled, and other requirements for obtaining such recovery under other provisions of this Agreement.

        (F)    The service payments shall constitute special awards to Plaintiffs and Declarant and shall not be considered as a payment of overtime, salary, wages and/or compensation to any Plaintiff or Declarant under the terms of any company benefit plan or for any purpose except for tax purposes as provided under Section 3.6 of this Agreement. The

receipt of service payments shall not affect the amount of contribution to or benefit under any company benefit plan.

    3.4    **Settlement Payments.**

        (A)    A Class Member who does not opt out pursuant to Section 2.4 of this Agreement will be deemed eligible for a payment hereunder. Regardless of whether or not he or she signs, negotiates, deposits, endorses or cashes his or her Settlement Checks, any Class Member who does not opt out pursuant to Section 2.4 of this Agreement is subject to the release set forth in Section 4.

        (B)    Settlement payments to Qualified Class Members shall not be considered as a payment of overtime, salary, wages and/or compensation to any Qualified Class Member under the terms of any company benefit plan or for any purpose except for tax purposes as provided under Section 3.6 of this Agreement. The receipt of settlement payments shall not affect the amount of contribution to or level of benefits under any company benefit plan.

        (C)    The Claims Administrator shall calculate "Settlement Payments" for each Qualified Class Member. All Settlement Payments to Qualified Class Members shall be paid from the Total Settlement Amount. All Settlement Payments that are not claimed by Qualified Class Members shall become part of the Unclaimed Settlement Amount, as described below. The Settlement Payments shall be calculated as follows:

        (1)    The Claims Administrator shall determine a "Net Settlement Amount," which shall equal the Total Settlement Amount (as described in Section 3.1 of this Agreement) minus: the reserve set aside for reasonable costs of settlement administration (as described in Section 2.1 of this Agreement); the amount of attorneys' fees and reimbursement for costs approved by the Court (as described in Section 3.2 of this Agreement); and the service payments to Plaintiffs and Declarant (as described in Section 3.3 of this Agreement).

        (2)    The Settlement Payment of each Qualified Class Member who worked for Pret in a Covered Position for no more than a week shall be $5 (the "Alternate Payment"). Such individuals are not eligible for the Settlement Payment described in Section 3.4(C)(3) of this Agreement.

        (3)    For each Qualified Class Member, other than the individuals described in Section 3.4 (C)(2), the proportionate share of the Net Settlement Amount shall be determined according the following formula as calculated by the Claims Administrator and approved by the Parties, based on data provided by Defendant as described in Section 5(A) of this Agreement (in agreeing to this formula, which implements the Parties' compromise as to the resolution of claims, Defendant does not admit that any Class Member's claim has merit):

            (a)    Assign each "Workweek" from March 29, 2014 through Final Approval (the "Recovery Period") the value of one (1.0) (the "Base Share"). For each Workweek, multiply the Base Share by the appropriate "Work-Time Factor." The sum of the results of these calculations is the "Individual Class Member Numerator" for each Qualified Class Member.

(b)     Add all Qualified Class Members' Individual Class Member Numerators to obtain the "Total Class Member Denominator."

(c)     To determine the "Resulting Decimal" for each Qualified Class Member, divide the Qualified Class Member's Individual Class Member Numerator by the Total Class Member Denominator.

(d)     To determine the amount to be paid to the Qualified Class Member multiply the Resulting Decimal by the "Available Net Settlement Amount."

(D)     The following definitions shall apply to the terms described in the formula set forth in Section 3.4 (C) (3) of this Agreement.

(1)     "Workweek" shall mean each Friday-Thursday weekly period in which a Qualified Class Member held a Covered Position.

(2)     "Work-Time Factor," which accounts for the difference in average weekly time worked as between full-time and part-time employees in Covered Positions, shall be determined as follows:

(a)     A Qualified Class Member will have a Work-Time Factor of 1.0 for each Workweek in which he or she was a part-time employee.

(b)     A Qualified Class Member will have a Work-Time Factor of 1.5 for each Workweek in which he or she was a full-time employee.

(3)     "Available Net Settlement Amount" shall mean the Net Settlement amount less the sum of Alternate Payments described in Section 3.4(C)(2) of this Agreement.

(E)     The Claims Administrator will determine the Unclaimed Settlement Amount, which is the total amount remaining in the Settlement Fund six months after the mailing of the Settlement Checks due to any uncashed Settlement Checks or service payments (the "Check Cashing Period"). For purposes of this Section, the mailing date shall be deemed to be the date posted on the original Settlement Checks. Regardless of whether any Settlement Checks are reissued, the Check Cashing Period shall end six months after the mailing of the original Settlement Checks. The Unclaimed Settlement Amount, if any, shall be applied to any unforeseen expenses with the remainder to be donated to City Harvest, 575 Eighth Avenue, Fourth Floor, New York, New York 10018 thirty (30) days after the end of the Check Cashing Period.

3.5     **Taxability of Payments.**

(A)     For tax purposes, 50% of the respective Settlement Payments made to the respective payees (collectively, "Employees") pursuant to Section 3.4 shall be treated as back wages (the "Wage Portion"), and 50% of such payments shall be treated as liquidated damages and interest (the "Non-Wage Portion").

(B)     The Claims Administrator, as administrator of the QSF making such payments, shall report the Wage Portion of the Settlement Payments to the respective payees and to the United States Internal Revenue Service (the "IRS") and to other appropriate taxing authorities ("Taxing Authority" or "Taxing Authorities") on IRS Forms W-2.  Such Wage Portion of the Settlement Payments shall be subject to applicable Income Withholding and Employee Portion Taxes, as determined by the Claims Administrator as administrator of the QSF making such payments.  Pret shall bear the cost of the Employer Portion Payroll Taxes due with respect to such Wage Portion of the Settlement Payments, which Employer Portion Payroll Taxes will not come out of the Total Settlement Amount. The Claims Administrator shall timely remit all such Employer Portion Payroll Taxes and all applicable Income Withholding and Employee Portion Taxes to the appropriate Taxing Authorities.

(C)     The Claims Administrator, as administrator of the QSF, shall report the Non-Wage Portion of the Settlement Payments pursuant to this Section to the respective payees and Taxing Authorities, to the extent required by law, under the payees' names and federal taxpayer identification numbers on IRS Forms 1099, and such payments shall be paid without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(D)     The Claims Administrator, as administrator of the QSF, shall report to the respective payees and to the Taxing Authorities on IRS Forms 1099 any service payments made pursuant to Section 3.3 of this Agreement, and such payments shall be paid without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(E)     The Claims Administrator, as administrator of the QSF, shall report the fees and costs paid to Class Counsel pursuant to Section 3.2: (i) to Class Counsel (and to the Taxing Authorities) on a Form 1099, under Class Counsel's federal taxpayer identification number; and (ii) to each Qualified Class Member (and to the Taxing Authorities) on a Form 1099, under Qualified Class Member's federal taxpayer identification number, in an amount equal to each Qualified Class Member's proportional share of such payments.  Payment of such fees and costs to Class Counsel shall be made without deductions for taxes and withholdings, except as required by law, as determined by the Claims Administrator as administrator of the QSF making such payments.

(F)     The Defendant shall have no liability or responsibility whatsoever for taxes of any Class Member, Class Counsel, or any other person, or for the filing of any tax returns, information reports or other documents with the IRS or any other taxing authority with respect thereto.  Each recipient of any payment made pursuant to this Agreement will be solely responsible for all taxes, interest and penalties owed by the recipient with respect to any payment received pursuant to this Agreement. Plaintiffs, on behalf of the Class, acknowledge and agree that Defendant has provided no advice as to the taxability of the payments received pursuant to this Agreement.

(G)     For tax purposes:

(1)     Pret shall be the "transferor" within the meaning of Treasury Regulation § 1.468B-1(d)(1) to the QSF with respect to the amounts transferred;

(2)     The Claims Administrator shall be the "administrator" of the QSF within the meaning of Treasury Regulation § 1.468B-2(k)(3), responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Treasury Regulation § 1.468B-2(1)(2) or any other applicable law on or with respect to the QSF, and in accordance with Section 3.6(B) of this Agreement; and

(3)     Pret and the Claims Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Treasury Regulation § 1.468B-1(j).

4.     **RELEASE**

4.1     **Release of Claims.**

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiffs, Declarant, and each Class Member who does not timely opt out pursuant to Section 2.4 of this Agreement, forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a Defendant in the Litigation, each solely in its capacity as such (collectively, the "Released Parties"), from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or failure to pay for all hours worked, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions related to wage-hour deficiencies that were alleged in the Litigation or could have been alleged in the Litigation and that arose during any time that such individual was employed by Pret up until the date of the entry of the order granting Final Approval ("Released Claims").  The Released Claims include without limitation claims based on state, local or federal law governing overtime pay, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay call-in pay, failure to pay premium pay, failure to pay wages upon termination, failure to provide appropriate wage statements or wage notices, improper tip pooling, denial of tips, improper calculation of overtime pay, failure to pay uniform costs or

maintenance pay, failure to pay for orientation or training time, unfair competition, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, New York Wage Payment Act, New York Labor Law §§ 190 *et seq.*, the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146, the New York City Fair Workweek Law and Rules, Administrative Code of the City of New York § 20-1201 *et seq.* and R.C.N.Y. § 7-601 *et seq.*, and all other statutes and regulations relating to the foregoing.

4.2     **Release of Attorneys' Fees and Costs.**  Class Counsel and Plaintiffs, on behalf of the Class, Declarant, and each individual member of the Class, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant and Released Parties for attorneys' fees or costs associated with the Litigation and Class Counsel's representation of any and all individuals in the Litigation.  Class Counsel further understand and agree that any fee payments approved by the Court will be Defendant's full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals.  Defendant shall have no additional liability for any attorneys' fees and costs associated with the Litigation.

4.3     **No Assignment.**  Class Counsel and Plaintiffs, on behalf of the Class, Declarant, and each individual member of the Class, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

4.4     **Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs, Declarant, Class Members, or any other individual, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendant enters into this agreement to avoid further protracted litigation and to resolve and settle all disputes.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on part of the Defendant or of the truth of any of the factual allegations asserted in the Litigation; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement.  The Parties understand and agree that this Agreement and all exhibits hereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

5.     **PLAN OF DISTRIBUTION**

(A)     Within 30 calendar days after Final Approval, Pret will provide the Claims Administrator with data for each Class Member for the period of time that each such Class Member held a Covered Position between Preliminary Approval and Final Approval showing each Class Member's dates of employment in a Covered Position between Preliminary Approval and Final Approval, if any, and full/part-time status during that time.

(B)     Within 20 calendar days after Pret provides the information described in Section 5(A) above, the Claims Administrator shall provide to Class Counsel and Defendant's Counsel a proposed plan of distribution of the Total Settlement Amount, containing the names of and proposed distribution to Qualified Class Members ("Plan of Distribution"). At the same time, the Claims Administrator shall also provide an itemized list of its costs and expenses and all other amounts to be deducted from the Total Settlement Amount, and the Claims Administrator shall also specify the amount of payroll taxes due with respect to the Settlement Payments to Qualified Class Members. Each Party shall have 7 calendar days from receipt of the Plan of Distribution to serve the other Party and the Claims Administrator with any corrections to the Plan of Distribution, or to comment on the administrative costs and expenses or other deductions. The Claims Administrator shall make any changes to the Plan of Distribution mutually agreed upon by the Parties in writing and then serve the final Plan of Distribution within 7 calendar days of receiving the last of such corrections. The Claims Administrator shall also prepare a preliminary plan of distribution and provide the preliminary plan of distribution to Class Counsel and Defendant's Counsel 30 days prior to the date of the Fairness Hearing.

(C)     If the Parties disagree over the Plan of Distribution, they will submit any disagreement to the Court for resolution. Any dispute over administrative costs and expenses shall also be submitted to the Court.

(D)     Within 30 calendar days after the Effective Date, or the date on which the Court resolves any disputes under Section 5(C), whichever is later, the Claims Administrator will distribute the funds in the QSF as of such date ("QSF Balance") by making the following payments:

(1)     Reimbursing Class Counsel for all costs and expenses approved by the Court as described in Section 3.2 of this Agreement;

(2)     Paying Class Counsel their Court-approved attorneys' fees as described in Section 3.2 of this Agreement;

(3)     Paying Plaintiffs and Declarant any Court-approved Service Payments as described in Section 3.3 of this Agreement, provided that each Plaintiff and Declarant will not receive his or her service payment until (1) the Court approves the payment and the form of the individual release attached as **EXHIBIT E**; and (2) he or she has executed and provided to Defendant's Counsel an individual release in the form attached as **EXHIBIT E** that he or she executed after the Court approves the service payment and form of the individual release; and

(4)      Paying each Qualified Class Member his or her Settlement Payment as described in Section 3.4(C).

(E)      In connection with the foregoing, the Claims Administrator will also timely mail all associated tax forms described in Section 3.6 of this Agreement.  The Claims Administrator shall use reasonable efforts to make a second mailing to Qualified Class Members whose Settlement Checks are returned because of incorrect addresses.  Such efforts shall include using social security numbers to obtain better address information and attempting to call such individuals.  In no event shall the Claims Administrator attempt more than one re-mailing of the Settlement Checks to any Class Member, and all efforts of the Claims Administrator to send Settlement Checks to Qualified Class Members shall cease no later than 2 months after the Claims Administrator makes the initial mailing of the Settlement Checks.  Any Settlement Checks not cashed by the payee within six (6) months after the Claims Administrator makes the initial mailing of the Settlement Checks, regardless of whether such checks were reissued, shall be void.  Payment will be stopped on such checks, and the amount thereof shall become part of the Unclaimed Settlement Amount as described in Section 3.4(D) of this Agreement.

## 6.     PUBLIC STATEMENTS

Any press releases or public statements regarding the settlement or the terms of this Agreement shall be negotiated between Class Counsel and Defendant.  Other than any press release that Class Counsel and Defendant agree on, Class Counsel shall make no other statement regarding the terms of this Agreement except as required to obtain Court approval of the settlement.

## 7.     MISCELLANEOUS

7.1     **Cooperation Between The Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use reasonable efforts to obtain the Court's approval of this Agreement and all of its terms.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

7.2     **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.  All prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.  The Parties agree that this Agreement shall not affect the enforceability of any independent separation agreement or release agreement entered into by, or any consent to sue filed by, any Class Member.

7.3     **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, Declarant, and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

7.4     **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering this Agreement.

7.5 **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

7.6 **Construction.** This Agreement shall be construed in accordance with the laws of the State of New York. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement; therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

7.7 **Force and Effect.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

7.8 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated hereby. The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendant's payment obligations hereunder.

7.9 **Waivers, etc. to be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

7.10 **Counterparts.** The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

7.11 **Facsimile & Email Signatures.** Any signature made and transmitted by facsimile or email for the purposes of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

7.12 **Signature by Class Counsel.** By their signatures below, Class Counsel execute this Agreement as to the duties and obligations herein that pertain to Class Counsel. In addition, Class Counsel represents, by their signatures below, that they have been authorized by the Plaintiffs and Declarant to sign this Agreement on their behalf.

DATED: ___06|18___ , 2018

PRET A MANGER (USA) Ltd., as
Defendant


By: ANDREW MCKEWAN
Its: VICE PRESIDENT - PEOPLE


DATED: ___June 18___ , 2018

LEE LITIGATION GROUP, PLLC, on
behalf of Class Members

By: _____
       C.K. Lee, Class Counsel

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

ANTHONY ESCOBAR, TONAKIA ）
MOSHA EVANS, and DIANNA ）
ABRAMOVA, on behalf of themselves, ）
FLSA Collective Plaintiffs and the Class, ）
                                          ）                 17-CV-05227 (VSB)
                  Plaintiffs, ）
                                          ）                 **ECF Case**
            v. ）
                                          ）

PRET A MANGER (USA) LIMITED, and ）
JOHN DOE CORPORATIONS 1-100, ）
                                          ）
                  Defendants. ）

------------------------------------------------------- x

### [PROPOSED] ORDER (1) CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND COLLECTIVE ACTION, (2) GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, (3) DIRECTING DISSEMINATION OF NOTICE AND RELATED MATERIAL TO THE CLASS, AND (4) SETTING DATE FOR FAIRNESS HEARING AND RELATED DATES

After participating in a private mediation session, and despite their adversarial positions in this matter, Plaintiffs Anthony Escobar, Tonakia Mosha Evans, and Dianna Abramova (collectively, "Plaintiffs") and Defendant Pret A Manger (USA) Limited ("Defendant" or "Pret") (with Plaintiffs, the "Parties") negotiated a settlement of this litigation. The terms of the proposed settlement ("Settlement") are set forth in the proposed Global Settlement Agreement, with exhibits ("Settlement Agreement").

On June 18, 2018, Plaintiffs filed a Notice Of Motion For Order (1) Conditionally Certifying Settlement Class, (2) Granting Preliminary Approval To Proposed Class Action Settlement And Plan Of Allocation, (3) Directing Dissemination of Notice And Related Material To The Class, and (4) Setting Date For Fairness Hearing And Related Dates ("Motion"). In their Motion, Plaintiffs requested that this Court conditionally certify for settlement purposes a class

under Federal Rule of Civil Procedure 23 and a co-extensive collective action under Section

16(b) of the Fair Labor Standards Act.  Plaintiffs also requested that the Court grant preliminary

approval to the Settlement Agreement, including the plan of allocation in that Agreement, and

that the Court approve a proposed Notice of Proposed Settlement of Class Action Lawsuit and

Fairness Hearing ("Class Notice," attached hereto as Exhibit B to the Settlement Agreement), a

proposed Opt-Out Statement (attached hereto as Exhibit C to the Settlement Agreement), and a

proposed change of address form (attached hereto as Exhibit D to the Settlement Agreement).

Having reviewed the Settlement Agreement and Motion, along with the Parties' prior

submissions in this matter, the Court now FINDS, CONCLUDES, AND ORDERS as follows:

## I.   <u>Background</u>

Plaintiffs in this lawsuit were employed by Pret as non-exempt team members.   Plaintiffs

bring claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law

("NYLL").  Plaintiffs claim, *inter alia*, that Defendant failed to pay non-exempt employees for

all the hours they worked, including applicable overtime pay for hours over forty in a workweek,

due to a purported practice of time shaving.  Plaintiffs, for themselves and others they claim are

similarly situated, sought to recover, *inter alia*, unpaid wages, liquidated damages, penalties,

injunctive relief and attorneys' fees and costs.  On December 29, 2017, Plaintiffs filed a motion

to conditionally certify an FLSA collective action  ("Conditional Certification Motion"). Among

the documents submitted in support of the Conditional Certification Motion, Plaintiffs provided a

Declaration by former Pret employee Steven Wilson ("Wilson" or "Declarant"), who claimed

that he and other employees had suffered wage-and-hour violations similar to those described in

the Complaint.  Defendant has disputed, and continues to dispute, Plaintiffs' allegations in this

lawsuit, and Defendant denies any liability for any of the claims that have or could have been alleged by Plaintiffs or the persons that they seek to represent.

## II.   __Definition Of The Settlement Class__

The Parties have entered into the Settlement Agreement solely for the purposes of compromising and settling their disputes in this matter. As part of the Settlement Agreement, Defendant has agreed not to oppose, for settlement purposes only, conditional certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3) and 29 U.S.C. § 216(b) of the following settlement class (the "Class"):

> All current and former employees of Pret who worked for Pret in the state of New York in a Covered Position (as a team member, team member star, barista, team member trainer, kitchen team leader, shop team leader, team leader, assistant manager, manager-in-training or any other hourly, non-exempt store-based position) at any time from March 29, 2014 to the date of entry of the Order Granting Preliminary Approval.

## III.   __Designation Of The Class As An FLSA Collective Action__

The Court finds that the members of the Class are similarly situated within the meaning of Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), for purposes of determining whether the terms of settlement are fair. Accordingly, the Court conditionally certifies the Class as an FLSA collective action. The Court authorizes the Notice (attached as Exhibit B to the Settlement Agreement) to be mailed to potential members of the FLSA collective action, notifying them of the pendency of the FLSA claim, and of their ability to join the lawsuit.

Members of the Class who sign, negotiate, endorse, deposit or cash their Settlement Checks in this matter will acknowledge the following: "My endorsement of this check acknowledges that I am receiving this payment pursuant to the resolution of my claims as a settlement class member in *Escobar v. Pret A Manger* and that I have opted into the case

pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and given my consent to become a party." All Settlement Checks shall be deemed filed with the Court at the time each Qualified Class Member signs, endorses, deposits, cashes or negotiates such his or her Settlement Checks.

## IV.   **Rule 23 Certification of the Class**

Preliminary settlement approval, provisional class certification, and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring all class members are notified of the terms of the proposed Agreement, and setting the date and time of the final approval hearing. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class); *Almonte v. Marina Ice Cream Corp.*, No. 1:16-CV-00660 (GBD), 2016 WL 7217258, at *2 (S.D.N.Y. Dec. 8, 2016) (conditionally certifying wage and hour settlement class and granting preliminary approval); *Clem v. Keybank, N.A.*, No. 13 CIV. 789 JCF, 2014 WL 1265909, at *2 (S.D.N.Y. Mar. 27, 2014) (same). In examining potential conditional certification of the settlement class, the Court has considered: (1) the allegations, information, arguments and authorities cited in the Motion for Preliminary Approval and supporting memorandum and declarations; (2) the allegations information, arguments and authorities provided by the Parties in connection with the pleadings and motions filed by each of them in this case; (3) information, arguments, and authorities provided by the Parties in conferences and arguments before this Court; (4) Defendant's conditional agreement, for settlement purposes only, not to oppose conditional certification of the settlement class specified in the Settlement Agreement; (5) the terms of the Settlement Agreement, including, but not limited to, the definition of the settlement class specified in the Settlement Agreement; and (6) the elimination of the need, on account of the Settlement, for the

Court to consider any trial manageability issues that might otherwise bear on the propriety of class certification.

This Court finds (exclusively for the present purposes of evaluating the settlement) that Plaintiffs meet all the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3). As required under Rule 23(a), Plaintiffs have demonstrated that their class is sufficiently numerous, that there are common issues across the class, that the Plaintiffs' claims are typical of the class, and that the Plaintiffs and their attorneys would be effective Class Representatives and Class counsel, respectively. The Court also finds that the common issues identified by Plaintiffs predominate over any individual issues in the case such that class action is superior in this context to other modes of litigating this dispute. Because the class certification request is made in the context of settlement only, the Court need not address the issue of manageability. The Court therefore concludes that the purported Class satisfies the elements of Rule 23(b)(3). Accordingly, pursuant to Rule 23(c) and (e), the court certifies this class for the purposes of settlement, notice and award distribution only.

Should this Settlement not receive final approval, be overturned on appeal, or otherwise not reach completion, the class and collective certification granted above shall be dissolved immediately upon notice from the Plaintiffs and Defendant, and this certification shall have no further effect in this case or in any other case. Plaintiffs will retain the right to seek class and collective certification in the course of litigation, and Defendant will retain the right to oppose class and collective certification. Neither the fact of this certification for settlement purposes only, nor the findings made herein, may be used to support or oppose any Party's position as to any future class or collective certification decision in this case, nor shall they otherwise have any impact on such future decision.

**V.**   **Appointment Of Class Representative And Class Counsel**

Plaintiffs Escobar, Evans, and Abramova are appointed as class representatives of the

Class, both under Rule 23 and under 29 U.S.C. § 216(b).

C.K. Lee, Esq. of the Lee Litigation Group, PLLC is appointed as class counsel for the

Class ("Class Counsel").

**VI.**   **Disposition Of Settlement Class If Settlement Agreement Does Not Become Effective**

If, for any reason, the Settlement Agreement ultimately does not become effective,

Defendant's agreement not to oppose conditional certification of the settlement class shall be

null and void in its entirety; this Order conditionally certifying the settlement class shall be

vacated; the Parties shall return to their respective positions in this lawsuit as those positions

existed immediately before the Parties executed the Settlement Agreement; and nothing stated in

the Settlement Agreement, the Motion, this Order, or in any attachments to the foregoing

documents shall be deemed an admission of any kind by any of the Parties or used as evidence

against, or over the objection of, any of the Parties for any purpose in this action or in any other

action.  In particular, the class certified for purposes of settlement shall be decertified, and

Defendant will retain the right to contest whether this case should be maintained as a class action

or collective action and to contest the merits of the claims being asserted by Plaintiffs.

**VII.**   **Preliminary Approval Of The Terms Of The Settlement Agreement, Including The Proposed Plan Of Allocation**

The Court has reviewed the terms of the Settlement Agreement and the description of the

Settlement in the Motion papers.  Based on that review, the Court concludes that the Settlement

is within the range of possible Settlement approval such that notice to the Class is appropriate.

The Court has also read and considered the declaration of C.K. Lee in support of

preliminary approval.  Based on review of that declaration, the Court concludes that the

Settlement was negotiated at arms length and is not collusive. The Court further finds that Class Counsel were fully informed about the strengths and weaknesses of the Class's case when they entered into the Settlement Agreement.

As to the proposed plan of allocation, the Court finds that the proposed plan is rationally related to the relative strengths and weaknesses of the respective claims asserted. The proposed plan of allocation is also within the range of possible approval such that notice to the Class is appropriate.

Accordingly, the Court hereby grants preliminary approval to the Settlement Agreement and the Plan of Allocation.

VIII. **Approval Of The Form And Manner Of Distributing Class Notice and Opt-Out Statement**

Plaintiffs have also submitted for this Court's approval a proposed Class Notice, change of address form, and Opt-Out Statement. The Court now considers each of these documents in turn.

The proposed Class Notice, change of address form, and Opt-Out Statement appear to be the best notice practical under the circumstances and appear to allow the Class Members a full and fair opportunity to consider the Parties' proposed settlement and develop a response. The proposed plan for distributing the Class Notice, change of address form, and the Opt-Out Statement appears to be a reasonable method calculated to reach all Class Members who would be bound by the settlement.

The Class Notice, change of address form, and Opt-Out Statement fairly, plainly, accurately, and reasonably inform Class Members of: (1) appropriate information about the nature of this litigation, the settlement class at issue, the identity of Class Counsel, and the essential terms of the Settlement Agreement and Settlement; (2) appropriate information about

Class Counsel's forthcoming application for attorneys' fees and other payments that will be deducted from the settlement fund; (3) appropriate information about how to participate in the Settlement; (4) appropriate information about this Court's procedures for final approval of the Settlement Agreement and Settlement; (5) appropriate information about how to challenge or opt-out of the Settlement, if they wish to do so; (6) appropriate information about how to notify the Claims Administrator of any address changes; and (7) appropriate instructions as to how to obtain additional information regarding this litigation, the Settlement Agreement, and the Settlement.

The Court, having reviewed the proposed Class Notice, change of address form, and Opt-Out Statement, finds and concludes that the proposed plan for distributing the same will provide the best notice practicable, satisfies the notice requirements of Rule 23(e), and satisfies all other legal and due process requirements.  Accordingly, the Court hereby Orders as follows:

1.      The form and manner of distributing the proposed Notice Materials are hereby approved.

2.      Promptly following the entry of this Order, the Claims Administrator shall prepare final versions of the Notice Materials, incorporating into the Notice the relevant dates and deadlines set forth in this Order.

3.      Within 15 calendar days of the date of entry of this Order, Defendant will provide the Claims Administrator and Class Counsel with the information regarding Class Members in accordance with the Settlement Agreement.

4.      Within 15 calendar days after receiving the information regarding Class Members specified in the Settlement Agreement, the Claims Administrator shall mail, <u>via</u> First Class United States Mail, postage prepaid, the final version of the Class Notice, along with the Opt-Out Statement and change of address form, using each Class Member's last known address as recorded in Pret's payroll system.  The Claims Administrator shall take reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and otherwise to provide the Class Notice.  The Claims Administrator will attempt re-mailing to Class Members for whom the mailing is returned as undeliverable.  The Claims Administrator shall notify Class Counsel and Defendant's Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing, and as well as any such mail returned as undeliverable after the subsequent mailing.  In no event shall the Claims Administrator make any mailing to any Class Member more than 30 calendar days after the initial mailing.

5.      The Claims Administrator shall take all other actions in furtherance of claims administration as are specified in the Settlement Agreement.

IX.   **Procedures For Final Approval Of The Settlement**

A.      **Fairness Hearing**

The Court hereby schedules, for _____, at the hour of _____, a hearing to determine whether to grant final certification of the Settlement Class, and the FLSA collective

action, and final approval of the Settlement Agreement and the Plan of Allocation (the "Fairness

Hearing").  At the Fairness Hearing, the Court also will consider any petition that may be filed

for the payment of attorneys' fees and costs/expenses to Class Counsel, and any service

payments to be made to the Plaintiffs and Declarant.  Class Counsel shall file their petition for an

award of attorneys' fees and reimbursement of costs/expenses and the petition for an award of

service payments no later than 30 days after the end of the Opt-Out Period.

**B.      Deadline To Request Exclusion From The Settlement**

Class Members who wish to be excluded from the Settlement must submit a written and

signed request to opt out to the Claims Administrator using the form ("Opt-Out Statement")

provided with the Class Notice.  To be effective, such Opt-Out Statements must be mailed to the

Claims Administrator via First Class United States Mail, postage prepaid, and postmarked by a

date certain to be specified on the Notice, which will be 45 calendar days after the Claims

Administrator makes the initial mailing of the notice.

The Claims Administrator shall stamp the postmark date of the Opt-Out Statement on the

original of each Opt-Out Statement that it receives and shall serve copies of each Statement on

Class Counsel and Defendant's Counsel not later than 2 business days after receipt thereof.  The

Claims Administrator also shall, within 5 calendar days after the end of the Opt-Out Period,

provide Class Counsel and Defendants' Counsel with (1) stamped copies of any Opt-Out

Statements, with Social Security Numbers redacted, and (2) a final list of all Opt-Out Statements.

Also within 5 calendar days after the end of the Opt-Out Period, the Claims Administrator (or

counsel for the Parties) shall file with the Clerk of Court copies of any timely submitted Opt-Out

Statements with Social Security Numbers and addresses redacted.  The Claims Administrator

shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes

accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

## C.     Deadline For Filing Objections To Settlement

Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such objections must be (1) mailed to the Claims Administrator via First-Class United States Mail, postage prepaid, and postmarked by a date certain, to be specified on the Notice, which shall be 45 calendar days after the initial mailing by the Claims Administrator of such Notice and (2) received by the Claims Administrator no later than 7 calendar days after the end of the Opt-Out Period.

The Claims Administrator shall stamp the postmark date and the date received on the original and send copies of each objection to the Parties by facsimile and overnight delivery not later than 2 business days after receipt thereof.  The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within 10 calendar days after the end of the Opt-In Period.

## D.     Deadline For Filing Motion For Judgment And Final Approval

No later than 30 calendar days after the end of the Opt-Out Period, Plaintiffs and Pret will submit a joint Motion for Judgment and Final Approval of the Settlement Agreement and Settlement.

## E.     Plaintiffs, Declarant's And Class Members' Release

If, at the Fairness Hearing, this Court grants Final Approval to the Settlement Agreement and Settlement, Plaintiffs, Declarant and each individual Class Member who does not timely opt out will release claims, by operation of this Court's entry of the Judgment and Final Approval, as

described in Section 4 of the Settlement Agreement, regardless of whether he or she signs,

negotiates, endorses, deposits, or cashes his or her Settlement Check.

**F.     Releases of Those Receiving Service Payments**

In addition, Plaintiffs and Declarant will execute individual releases in exchange for any

court-approved service payments.

**G.     Qualification for Payment**

Any Class Member who does not opt out will qualify for payment and will be sent a

check containing his or her distribution of the Settlement after final approval of the settlement.

DATED: _____        _____

Hon. Vernon S. Broderick
United States District Judge

EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

**NOTICE OF CLASS ACTION SETTLEMENT**

*This is a court-authorized notice.  This is not a solicitation from a lawyer.*

TO:    PEOPLE WHO HAVE WORKED FOR PRET A MANGER (USA) LIMITED ("PRET")
IN NEW YORK SHOPS AS NON-EXEMPT (HOURLY) EMPLOYEES FROM MARCH 29,
2014 TO [DATE]

Based on Pret's records, you are eligible to participate in the proposed $875,000
settlement of the lawsuit *Anthony Escobar et al. v. Pret A Manger (USA) Limited et al*.  **Please
read this Notice carefully**.  It contains important information about your rights concerning the
class action settlement described below.

**As described more fully below in Section 5.C of this Notice, to participate in the
settlement and receive a settlement payment, you do not need to take any action.  If your
address has changed or will change before the settlement is approved, you will need to
provide your updated contact information to the Claims Administrator at the address
below in Section 10.**

If you do not want to participate in the settlement, and you do not want to be bound by
the Release described in Section 5.B, you must exclude yourself by mailing the enclosed Opt-
Out Statement to the Claims Administrator.  To be effective, this Opt-Out Statement must be
postmarked by no later than [DATE].  This process is described more fully below in Section 8.
You can also object to the settlement as described in Section 7.

## YOUR OPTIONS

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **PARTICIPATE IN THE SETTLEMENT AND RECEIVE A PAYMENT** | To receive a payment, you do not have to do anything at this time (except update your address if it has changed). If the Court grants final approval of the settlement, you will receive a payment in the mail. |
| **OPT OUT** | Exclude yourself from the settlement by filling out the enclosed opt-out form and sending it back to the Claims Administrator at the address below in Section 8.  To be excluded, your opt-out form must be postmarked by **[DATE]**. |
| **OBJECT** | Write to the Court (via the Claims Administrator) to object to the settlement, or any part of it, as detailed below.  For your objection to be considered, it must be postmarked by **[DATE]** and received by the Claims |

| | Administrator by **[DATE]**. You can also attend the fairness hearing the Court will hold on the settlement to talk about your objection if you say in your objection that you want to speak at the hearing. |
| --- | --- |

The rest of this Notice further explains the nature of the lawsuit and the terms of the settlement, and lets you know about your rights. This Notice does not reflect the Court's view as to the merits of any of the claims or defenses asserted by the parties.

**1.     What Is This Lawsuit About?**

Plaintiffs Anthony Escobar, Tonakia Evans and Dianna Abramova were employed by Pret as team members and were paid on an hourly, non-exempt basis. In this lawsuit, they allege that Pret violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by failing to pay non-exempt (hourly) employees in New York shops for all the hours they worked, including overtime for hours over forty in a workweek, and by failing to provide accurate wage statements and wage notices, among other claims. Plaintiffs, for themselves and other non-exempt (hourly) employees in New York, sought to recover unpaid wages and other back pay, liquidated damages and penalties, injunctive relief and attorneys' fees and costs. For its part, Pret has denied and continues to deny any wrongdoing and denies and all liability and damages in the lawsuit. Nonetheless, to avoid the burden, expense, inconvenience and uncertainty of continued litigation, including potential appeals, Plaintiffs and Pret have concluded that it is in each of their best interests to settle the Lawsuit.

The case is presently before Judge Vernon S. Broderick, United States District Judge for the United States District Court for the Southern District of New York. Judge Broderick has not made any decisions on the merits of the case. On [DATE], Judge Broderick conditionally certified this matter as a class action and granted preliminary approval of the settlement, subject to a fairness hearing which will take place on [DATE].

**2.     What Is a Class Action?**

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more representative plaintiffs, also known as "Plaintiffs" or "Class Representatives," file a lawsuit asserting claims on behalf of the entire group, called a "Class." Members of the Class are called "Class Members."

**3.     Who Is Included In the Lawsuit?**

You are a Class Member if you meet all of the following criteria:

You were employed by Pret in New York as a team member, team member star, barista, team member trainer, kitchen team leader, shop team leader, team leader, assistant manager, assistant manager-in-training, manager-in-training, or any other hourly, non-exempt store-based position at any time from March 29, 2014 until [Preliminary Approval Date].

2

**4.      Who Is Class Counsel?**

The Court has approved and appointed lawyers to represent all members of the Class. Class Counsel is C.K. Lee, Esq. of the Lee Litigation Group, PLLC.  Class Counsel can be reached at: 30 East 39th Street, Second Floor, New York, NY 10016, Tel: (212)465-1188, email: cklee@leelitigation.com.

You may also enter an appearance through your own lawyer if you choose.  If you do hire your own lawyer, you will be responsible for paying him or her.

**5.      What Are the Terms of the Proposed Settlement?**

Plaintiffs and Defendant have agreed to the settlement terms summarized below.  The complete terms and conditions of the proposed settlement are on file with the Clerk of Court at the address listed below in Section 10.  The settlement agreement will not become effective (and no payments will be made) unless and until it receives final court approval, and any appeals are exhausted.

**(a)      What does the Class get?**

Class Members who do not opt out, as described in Section 8, will be eligible to receive a specified share of the $875,000 settlement fund, less certain deductions described below, based on a formula approved by the Court.

The following adjustments will be made to the $875,000 amount prior to distribution of the settlement funds to Class Members:

- <u>Settlement Administration Fees</u>:  A reserve will be set aside for reasonable costs associated with administering the Settlement (estimated to be [$50,000]).  The reserve will be used to pay a claims administration company for mailings, processing claims, providing information and assistance to Class Members, and preparing information reported to the Court.

- <u>Attorneys' Fees and Costs</u>: Class Counsel will seek, and Pret will not oppose, an award covering fees not to exceed 33% of the $875,000 settlement fund described above, plus reasonable costs and out-of-pocket expenses, in exchange for their considerable time and effort pursuing this case on a contingency fee basis.  All fee awards, costs and expenses paid to Class Counsel will be paid from the settlement fund.

- <u>Service Payments</u>: If the Court approves such payments, certain individuals will receive payments because they provided service to the Class by helping Class Counsel to formulate claims.  Specifically, Plaintiffs will seek $5,000 each on behalf of themselves and Steven Wilson ("Declarant"), who has provided testimony in this case.  The payments outlined in this paragraph are separate from and in addition to the share of the settlement fund that Plaintiffs and Declarant receiving service payments may otherwise be eligible to receive.

The remaining amount in the settlement fund (the "Net Settlement Fund") will be distributed according to the method set forth below in Section 5(d).

(b)     **What does it mean to participate in the settlement?**

If the Court grants final approval of the Settlement, in exchange for the $875,000 settlement described above, this action will be dismissed with prejudice and Class Members who do not opt out will release Pret from the claims described below.  When claims are "released," that means that a person covered by the release cannot sue Pret or its related entities for any of the claims that are covered by the release.

The terms of the Release in the Settlement Agreement read:

"By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement, Plaintiffs, Declarant, and each Class Member who does not timely opt out pursuant to Section 2.4 of this Agreement, forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a Defendant in the Litigation, each solely in its capacity as such (collectively, the "Released Parties"), from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or failure to pay for all hours worked, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions related to wage-hour deficiencies that were alleged in the Litigation or could have been alleged in the Litigation and that arose during any time that such individual was employed by Pret up until the date of the entry of the order granting Final Approval ("Released Claims").  The Released Claims include without limitation claims based on state, local or federal law governing overtime pay, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay call-in pay, failure to pay premium pay, failure to pay wages upon termination, failure to provide appropriate wage statements or wage notices, improper tip pooling, denial of tips, improper calculation of overtime pay, failure to pay uniform costs or maintenance pay, failure to pay for orientation or

4

training time, unfair competition, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 *et seq.*, New York Wage Payment Act, New York Labor Law §§ 190 *et seq.*, the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146, the New York City Fair Workweek Law and Rules, Administrative Code of the City of New York § 20-1201 *et seq.* and R.C.N.Y. § 7-601 *et seq.*, and all other statutes and regulations relating to the foregoing."

(c)     **How can I get a share of the settlement?**

**If you wish to receive a settlement payment, you do not need to take any action.  If the Court provides final approval of the Settlement, you will receive a settlement payment as long as you do not opt out.  If your address has changed or will change before the settlement checks will be issued, you should provide your updated contact information to the Claims Administrator at the address below in Section 10.**

By signing, endorsing, depositing, cashing or otherwise negotiating your settlement check, you acknowledge the following statement:

"My endorsement of this check acknowledges that I am receiving this payment pursuant to the resolution of my claims as a settlement class member in *Escobar v. Pret A Manger* and that I have opted into the case pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and given my consent to become a party."

You should keep in mind that even if you don't sign, negotiate, endorse, deposit or cash your settlement check, you will still be bound by the release described in Section 5(b) of this notice if you do not opt out.

You will have six months to cash or deposit your check.  Thirty (30) days after the end of the six month period, the amounts of any uncashed checks will be applied to costs associated with distributing the settlement, with the remainder to be donated to City Harvest.

(d)     **How much will my payment be?**

Each Class Member will receive a share of the Net Settlement Amount (that is, the settlement funds that remain after deductions are made for claims administration costs, service payments, and attorneys' fees and expenses).

Payroll records reflect that there are currently approximately [INSERT NUMBER OF CLASS MEMBERS AT DATE OF PRELIMINARY APPROVAL ORDER] Class Members.  If you worked for Pret in an hourly, non-exempt store-based role in New York at for no more than one week, your settlement share will be $5 (five dollars) (the "Alternate Payment"). You will not be eligible for any additional payments from the Net Settlement Amount. If you worked for Pret

in a an hourly, non-exempt store-based role in New York for more than one week, your settlement share will be a proportionate share of the Net Settlement Amount based on the number of weeks you worked for Pret in an hourly, non-exempt store-based role in New York and whether you were a full-time or part-time employee during each workweek.  Your share will also depend on whether the Court approves the request for attorney's fees and service awards.

More specifically, for each workweek when you held an hourly non-exempt store-based position in New York, you will receive a base share of 1.  Your base share for each workweek will then be multiplied by a work-time factor based on whether you were a full-time or part-time employee during that workweek.  Full-time employees get a work-time factor of 1.5 and part-time employees get a work-time factor of 1.  To obtain your individual settlement share, all of your weekly calculations will then be added together (this will be your individual "numerator"), divided by the total weekly calculations for all Class Members (this will be your individual "denominator"), and multiplied by the "Available Net Settlement Amount." The "Available Net Settlement Amount" is the sum remaining after subtracting all Alternate Payments from the Net Settlement Amount.

For example, someone who worked as a full-time Team Member in a New York shop for 30 workweeks would be assigned 30 base shares.  For each of those 30 workweeks, the team member would get a work-time factor of 1.5.  Thus, for each workweek, that team member would be assigned a share of 1.5 (base share of 1 x work-time factor of 1.5).  Since that team member worked for 30 workweeks, that team member's numerator is 45 (30 x 1.5).  That numerator of 45 will then be divided across all class member numerators and multiplied by the Available Net Settlement Amount to obtain that class member's settlement share.

Although the number is subject to change, due to final determination as to the number of members comprising the Class, and subject to Court approval on fees and costs, it is anticipated that the average amount each Class Member who worked for Pret for more than one week will receive will be:

For full-time employees: ___; and

For part-time employees: ___ .

Because this is an average (and the total amount of the settlement available for distribution to the class may change), your individual amount will be higher or lower than this.

One half of your settlement payment will be treated as wages with taxes withheld and will be reported to the IRS and state tax authorities on a W-2 form. The other half will be treated as non-wages, will be reported to tax authorities on a 1099 Form, and will not have taxes withheld.  You will be responsible for any taxes due on the non-wage portion.

**6.      When Is the Fairness Hearing To Approve The Settlement?**

The Court has granted preliminary approval of the proposed Settlement, concluding preliminarily that the Settlement is fair, adequate, and reasonable and that the proposed distribution of the Settlement amount is fair, adequate, and reasonable.

A hearing will be held to determine whether final approval of the Settlement will be granted, and also to determine the amount of attorneys' fees, costs, and service payments to be awarded. At the hearing, the Court will hear objections, if any, and arguments concerning the fairness of the proposed Settlement, the request for reasonable attorneys' fees and costs, and the request for service payments. The hearing will take place before Judge Broderick on [DATE] at [TIME], or as soon thereafter as practicable, at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007. The time and date of this hearing may be continued or adjourned, so please contact Class Counsel prior to the date of the hearing if you plan to attend.

YOU ARE NOT OBLIGATED TO ATTEND THIS HEARING. YOU MAY ATTEND THE HEARING IF YOU PLAN TO OBJECT TO THE SETTLEMENT. YOU MAY ALSO RETAIN YOUR OWN ATTORNEY TO REPRESENT YOU IN YOUR OBJECTIONS. IF YOU WISH TO OBJECT TO THE SETTLEMENT, YOU MUST SUBMIT A WRITTEN OBJECTION AS DESCRIBED IN THE FOLLOWING SECTION. IF YOU WISH TO APPEAR AT THE HEARING TO DISCUSS YOUR OBJECTION YOU MUST STATE IN YOUR OBJECTION YOUR INTENTION TO APPEAR AT THE FAIRNESS HEARING.

**7.      How Can I Object to the Settlement?**

If you want to present objections at the Fairness Hearing, you must submit a written statement of the objection(s) to the Claims Administrator at the address below. Your objection will not be heard unless it is mailed to the Claims Administrator via First Class United States Mail, postage prepaid. To be effective any objections must be postmarked no later than [DATE] and received by the Claims Administrator no later than [DATE]. You do not need to be represented by counsel to object. If you wish to present your objection at the fairness hearing, you must state your intention to do so in your written objection. Although you do not need to, you may hire a lawyer to assist you with your objection or to represent you at the Fairness Hearing. If you hire your own lawyer, you will be responsible for paying that lawyer yourself.

[CLAIMS ADMINISTRATOR ADDRESS]

**8.      How Can I Opt Out Of The Settlement?**

You have the right to exclude yourself, and yourself only, from this lawsuit and the Settlement. **If you choose to exclude yourself, you will not be barred from seeking relief with respect to any legal claims and will be free to pursue an individual claim, if any, against Pret, but you will not be eligible to receive any settlement payment.**

If you intend to exclude yourself, you must complete the enclosed Opt-Out Statement and mail it to the Claims Administrator at the address below. The Opt-Out Statement must be mailed to the Claims Administrator via First Class United States Mail, postage prepaid, and postmarked no later than [DATE].

[CLAIMS ADMINISTRATOR ADDRESS]

9.      **How Can I Examine Court Records?**

This Notice contains a general description of the case and does not cover all of the issues and proceedings thus far.  If you want to look at the complete case file, you should visit the Clerk of Court, United States Courthouse, 40 Foley Square, New York, NY 10007.  The Clerk will make all files relating to this lawsuit available to you for inspection and copying at your own expense.  You may enter an appearance in this case through an attorney if you so desire but you will be responsible for paying that attorney yourself.

10.     **What Do I Do If I Have More Questions?**

If you have questions about this Notice, or want additional information, you can contact the Claims Administrator at [PHONE NUMBER] or [E-MAIL ADDRESS].  You can also visit the case website at [INSERT].

11.     **No Retaliation for Participating**

Pret cannot retaliate against you for joining this lawsuit or participating in the settlement.  If you are employed by Pret during the pendency of this lawsuit, you will continue to be bound by Pret's applicable policies and procedures governing the terms and conditions of your employment.

**Dated:** _____

**This Notice is sent to you by Order of the United States District Court for the Southern District of New York.**

EXHIBIT C

## EXHIBIT C

### OPT-OUT STATEMENT
**Anthony Escobar et al.**

**v.**

### Pret A Manger (USA) Limited et al.

**SUBMIT THIS FORM ONLY IF YOU DO NOT WISH TO REMAIN A CLASS MEMBER.  IF YOU SUBMIT THIS FORM, YOU WILL NOT BE ELIGIBLE TO RECEIVE ANY MONEY FROM THE SETTLEMENT.**

I wish to opt out of the Settlement of the *Anthony Escobar et al. v. Pret A Manger (USA) Limited et al.* case.  I understand that by opting out, I will be excluded from the Settlement and will receive no money from the Settlement.  I understand that in any separate lawsuit, it is possible that I may receive nothing or less than I would have received if I had participated in the Settlement in this lawsuit.  I understand that any separate lawsuit by me will be undertaken at my own expense and at my own risk.  I understand that Counsel for the Class will not represent my interests if I opt out, unless I separately retain such Counsel's services.

_____
Print Name

_____
Social Security Number

_____
Signature

**SEND TO CLAIMS ADMINISTRATOR AT
[ADDRESS]**

**MUST BE MAILED BY UNITED STATES FIRST CLASS MAIL
AND POSTMARKED NO LATER THAN [DATE]**

**WE ADVISE YOU TO KEEP A COPY FOR YOUR RECORDS—YOU MAY WISH TO
MAIL RETURN RECEIPT REQUESTED**

EXHIBIT D

*Escobar et al. v. Pret A Manger (USA) Ltd.., No. 17-CV-05227 (VSB) (S.D.N.Y.)*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

*This is a court-authorized notice. This is not a solicitation from a lawyer.*

CHANGE OF ADDRESS FORM

## To [Name]

We need to be sure we can contact you. If your address is different than the address to which the Notice of Class Action Settlement was mailed or is expected to change prior to the mailing of the settlement payment as described in Section 5(c) of the Notice of Class Action Settlement, please complete this form and send it to the Claims Administrator at the address at the bottom of this form.

NAME: _____

ADDRESS: _____

CITY: _____

STATE: _____   ZIP: _____

ALTERNATE CONTACT INFORMATION OF A FAMILY MEMBER OR FRIEND (IN CASE WE CANNOT REACH YOU):

NAME: _____   RELATIONSHIP: _____

ADDRESS: _____

CITY: _____

STATE: _____   ZIP: _____

Please return this sheet to **[INSERT CLAIMS ADMINISTRATOR CONTACT]**.

EXHIBIT E

## RELEASE ("RELEASE") OF PLAINTIFF AND CLASS REPRESENTATIVE
## ANTHONY ESCOBAR

In exchange for good and valuable consideration described in Section 3.3 of the Global Settlement Agreement ("Settlement Agreement") entered into in *Escobar et al. v. Pret A Manger (USA) Ltd*, Case No. 17-CV-05227 (VSB) (KHP), in the United States District Court for the Southern District of New York (the "Litigation"), Plaintiff Anthony Escobar ("Plaintiff") agrees to release and hereby does forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a Defendant in the Litigation, each solely in its capacity as such (collectively, the "Released Parties"), from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which Plaintiff has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or failure to pay for all hours worked, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions related to wage-hour deficiencies that were alleged in the Litigation or could have been alleged in the Litigation and that arose during any time that Plaintiff was employed by Pret up until the date of the entry of the order granting Final Approval ("Released Claims").  The Released Claims include without limitation claims based on state, local or federal law governing overtime pay, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay call-in pay, failure to pay premium pay, failure to pay wages upon termination, failure to provide appropriate wage statements or wage notices, improper tip pooling, denial of tips, improper calculation of overtime pay, failure to pay uniform costs or maintenance pay, failure to pay for orientation or training time, unfair competition, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., New York Wage Payment Act, New York Labor Law §§ 190 et seq., the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146, the New York City Fair Workweek Law and Rules, Administrative Code of the City of New York § 20-1201 et seq. and R.C.N.Y. § 7-601 et seq., and all other statutes and regulations relating to the foregoing. This Release also covers the claims delineated in Section 4 of the Settlement Agreement.

This Release does not release or waive (i) claims arising after the execution of this Release, or (ii) any right to file a charge with the United States Equal Employment Opportunity Commission ("EEOC"), but Plaintiff agrees to forfeit any monetary recovery or other personal relief should the EEOC or any other agency pursue claims on his behalf.

Plaintiff agrees that he has voluntarily executed this Release on his own behalf, and also on behalf of any heirs, agents, representatives, successors and assigns that Plaintiff may have now or in the future.

Plaintiff acknowledges that the payment provided to him in exchange for this Release constitutes consideration for the Release, in that it is a payment to which Plaintiff would not have been entitled had Plaintiff not signed this Release.

Plaintiff acknowledges that he has had sufficient time to review and consider this Release prior to its execution.  Further, Plaintiff is hereby advised to consult with his attorney about this Release prior to executing this Release.  Plaintiff hereby acknowledges that he did, prior to executing this Release, consult with his attorney about this Release.

In case any part of this Release is found or held to be invalid, illegal or otherwise unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

This Release shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York.

Plaintiff represents and acknowledges that, in executing this Release, Plaintiff has not relied upon any representation or statement not set forth herein made by any of the Released Parties or by any of the Released Parties' agents, representatives, or attorneys.

Any signature made and transmitted by facsimile, copy or .pdf for the purposes of executing this Release shall be deemed an original signature for purposes of this Release.

Plaintiff hereby acknowledges that he understands and agrees to this Release.

This Release has been approved by the Court as part of its approval of the settlement of the Litigation.


DATED: _____     BY:_____
                                                                          Anthony Escobar



NOTARIZATION
State of New York
County of _____

Subscribed and sworn to me this _____ day of _____, 2018 by
_____ who personally proved to me on the basis of satisfactory
evidence to be the person who appeared before me.

GENERAL RELEASE ("RELEASE")
OF PLAINTIFF AND CLASS REPRESENTATIVE
STEVEN WILSON

In exchange for good and valuable consideration described in Section 3.3 of the Global Settlement Agreement ("Settlement Agreement") entered into in *Escobar et al. v. Pret A Manger (USA) Ltd,* Case No. 17-CV-05227 (VSB) (KHP), in the United States District Court for the Southern District of New York (the "Litigation"), Declarant Steven Wilson ("Declarant") agrees to release and hereby does forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a Defendant in the Litigation, each solely in its capacity as such (collectively, the "Released Parties"), from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which Declarant has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or failure to pay for all hours worked, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions related to wage-hour deficiencies that were alleged in the Litigation or could have been alleged in the Litigation and that arose during any time that Declarant was employed by Pret up until the date of the entry of the order granting Final Approval ("Released Claims"). The Released Claims include without limitation claims based on state, local or federal law governing overtime pay, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay call-in pay, failure to pay premium pay, failure to pay wages upon termination, failure to provide appropriate wage statements or wage notices, improper tip pooling, denial of tips, improper calculation of overtime pay, failure to pay uniform costs or maintenance pay, failure to pay for orientation or training time, unfair competition, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., New York Wage Payment Act, New York Labor Law §§ 190 et seq., the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146, the New York City Fair Workweek Law and Rules, Administrative Code of the City of New York § 20-1201 et seq. and R.C.N.Y. § 7-601 et seq., and all other statutes and regulations relating to the foregoing. This Release also covers the claims delineated in Section 4 of the Settlement Agreement.

This Release does not release or waive (i) claims arising after the execution of this Release, or (ii) any right to file a charge with the United States Equal Employment Opportunity Commission ("EEOC"), but Declarant agrees to forfeit any monetary recovery or other personal relief should the EEOC or any other agency pursue claims on his behalf.

Declarant agrees that he has voluntarily executed this Release on his own behalf, and also on behalf of any heirs, agents, representatives, successors and assigns that Declarant may have now or in the future.

Declarant acknowledges that the payment provided to him in exchange for this Release constitutes consideration for the Release, in that it is a payment to which Declarant would not have been entitled had Declarant not signed this Release.

Declarant acknowledges that he has had sufficient time to review and consider this Release prior to its execution. Further, Declarant is hereby advised to consult with his attorney about this Release prior to

executing this Release.  Declarant hereby acknowledges that he did, prior to executing this Release, consult with his attorney about this Release.

In case any part of this Release is found or held to be invalid, illegal or otherwise unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

This Release shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York.

Declarant represents and acknowledges that, in executing this Release, Declarant has not relied upon any representation or statement not set forth herein made by any of the Released Parties or by any of the Released Parties' agents, representatives, or attorneys.

Any signature made and transmitted by facsimile, copy or .pdf for the purposes of executing this Release shall be deemed an original signature for purposes of this Release.

Declarant hereby acknowledges that he understands and agrees to this Release.

This Release has been approved by the Court as part of its approval of the settlement of the Litigation.

DATED: _____          BY:_____
                                                                    Steven Wilson




NOTARIZATION
State of New York
County of _____

Subscribed and sworn to me this _____ day of _____, 2018 by
_____ who personally proved to me on the basis of satisfactory evidence to be the person who appeared before me.

GENERAL RELEASE ("RELEASE")
OF PLAINTIFF AND CLASS REPRESENTATIVE
DIANNA ABRAMOVA

In exchange for good and valuable consideration described in Section 3.3 of the Global Settlement Agreement ("Settlement Agreement") entered into in *Escobar et al. v. Pret A Manger (USA) Ltd,* Case No. 17-CV-05227 (VSB) (KHP), in the United States District Court for the Southern District of New York (the "Litigation"), Plaintiff Dianna Abramova ("Plaintiff") agrees to release and hereby does forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a Defendant in the Litigation, each solely in its capacity as such (collectively, the "Released Parties"), from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which Plaintiff has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or failure to pay for all hours worked, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions related to wage-hour deficiencies that were alleged in the Litigation or could have been alleged in the Litigation and that arose during any time that Plaintiff was employed by Pret up until the date of the entry of the order granting Final Approval ("Released Claims"). The Released Claims include without limitation claims based on state, local or federal law governing overtime pay, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay call-in pay, failure to pay premium pay, failure to pay wages upon termination, failure to provide appropriate wage statements or wage notices, improper tip pooling, denial of tips, improper calculation of overtime pay, failure to pay uniform costs or maintenance pay, failure to pay for orientation or training time, unfair competition, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., New York Wage Payment Act, New York Labor Law §§ 190 et seq., the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146, the New York City Fair Workweek Law and Rules, Administrative Code of the City of New York § 20-1201 et seq. and R.C.N.Y. § 7-601 et seq., and all other statutes and regulations relating to the foregoing. This Release also covers the claims delineated in Section 4 of the Settlement Agreement.

This Release does not release or waive (i) claims arising after the execution of this Release, or (ii) any right to file a charge with the United States Equal Employment Opportunity Commission ("EEOC"), but Plaintiff agrees to forfeit any monetary recovery or other personal relief should the EEOC or any other agency pursue claims on her behalf.

Plaintiff agrees that she has voluntarily executed this Release on her own behalf, and also on behalf of any heirs, agents, representatives, successors and assigns that Plaintiff may have now or in the future.

Plaintiff acknowledges that the payment provided to her in exchange for this Release constitutes consideration for the Release, in that it is a payment to which Plaintiff would not have been entitled had Plaintiff not signed this Release.

Plaintiff acknowledges that she has had sufficient time to review and consider this Release prior to its execution. Further, Plaintiff is hereby advised to consult with her attorney about this Release prior to

executing this Release.  Plaintiff hereby acknowledges that she did, prior to executing this Release, consult with her attorney about this Release.

In case any part of this Release is found or held to be invalid, illegal or otherwise unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

This Release shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York.

Plaintiff represents and acknowledges that, in executing this Release, Plaintiff has not relied upon any representation or statement not set forth herein made by any of the Released Parties or by any of the Released Parties' agents, representatives, or attorneys.

Any signature made and transmitted by facsimile, copy or .pdf for the purposes of executing this Release shall be deemed an original signature for purposes of this Release.

Plaintiff hereby acknowledges that she understands and agrees to this Release.

This Release has been approved by the Court as part of its approval of the settlement of the Litigation.

DATED: _____         BY:_____
                                           Dianna Abramova



NOTARIZATION
State of New York
County of _____

Subscribed and sworn to me this _____ day of _____, 2018 by
_____ who personally proved to me on the basis of satisfactory
evidence to be the person who appeared before me.

GENERAL RELEASE ("RELEASE")
OF PLAINTIFF AND CLASS REPRESENTATIVE
TONAKIA MOSHA EVANS

In exchange for good and valuable consideration described in Section 3.3 of the Global Settlement Agreement ("Settlement Agreement") entered into in *Escobar et al. v. Pret A Manger (USA) Ltd,* Case No. 17-CV-05227 (VSB) (KHP), in the United States District Court for the Southern District of New York (the "Litigation"), Plaintiff Tonakia Mosha Evans ("Plaintiff") agrees to release and hereby does forever and fully release Defendant, its owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a Defendant in the Litigation, each solely in its capacity as such (collectively, the "Released Parties"), from any and all past and present matters, claims, demands, causes of action, and appeals of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which Plaintiff has or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon federal, state or local laws governing overtime pay, wage requirements, or failure to pay for all hours worked, or otherwise arise out of or relate to the facts, acts, transactions, occurrences, events or omissions related to wage-hour deficiencies that were alleged in the Litigation or could have been alleged in the Litigation and that arose during any time that Plaintiff was employed by Pret up until the date of the entry of the order granting Final Approval ("Released Claims"). The Released Claims include without limitation claims based on state, local or federal law governing overtime pay, payment of wages, hours worked, denial of meal periods and rest breaks, denial of spread of hours pay, failure to pay call-in pay, failure to pay premium pay, failure to pay wages upon termination, failure to provide appropriate wage statements or wage notices, improper tip pooling, denial of tips, improper calculation of overtime pay, failure to pay uniform costs or maintenance pay, failure to pay for orientation or training time, unfair competition, failure to provide benefits or benefit credits, failure to keep records of hours worked or compensation due, and penalties for any of the foregoing, including without limitation claims under the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, New York Labor Law §§ 650 et seq., New York Wage Payment Act, New York Labor Law §§ 190 et seq., the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, 12 N.Y.C.R.R. part 146, the New York City Fair Workweek Law and Rules, Administrative Code of the City of New York § 20-1201 et seq. and R.C.N.Y. § 7-601 et seq., and all other statutes and regulations relating to the foregoing. This Release also covers the claims delineated in Section 4 of the Settlement Agreement.

This Release does not release or waive (i) claims arising after the execution of this Release, or (ii) any right to file a charge with the United States Equal Employment Opportunity Commission ("EEOC"), but Plaintiff agrees to forfeit any monetary recovery or other personal relief should the EEOC or any other agency pursue claims on her behalf.

Plaintiff agrees that she has voluntarily executed this Release on her own behalf, and also on behalf of any heirs, agents, representatives, successors and assigns that Plaintiff may have now or in the future.

Plaintiff acknowledges that the payment provided to her in exchange for this Release constitutes consideration for the Release, in that it is a payment to which Plaintiff would not have been entitled had Plaintiff not signed this Release.

Plaintiff acknowledges that she has had sufficient time to review and consider this Release prior to its execution. Further, Plaintiff is hereby advised to consult with her attorney about this Release prior to

executing this Release.  Plaintiff hereby acknowledges that she did, prior to executing this Release, consult with her attorney about this Release.

In case any part of this Release is found or held to be invalid, illegal or otherwise unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

This Release shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York.

Plaintiff represents and acknowledges that, in executing this Release, Plaintiff has not relied upon any representation or statement not set forth herein made by any of the Released Parties or by any of the Released Parties' agents, representatives, or attorneys.

Any signature made and transmitted by facsimile, copy or .pdf for the purposes of executing this Release shall be deemed an original signature for purposes of this Release.

Plaintiff hereby acknowledges that she understands and agrees to this Release.

This Release has been approved by the Court as part of its approval of the settlement of the Litigation.

DATED: _____          BY:_____
                                            Tonakia Mosha Evans




NOTARIZATION
State of New York
County of _____

Subscribed and sworn to me this _____ day of _____, 2018 by
_____ who personally proved to me on the basis of satisfactory
evidence to be the person who appeared before me.